UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA M. G. M.,[1]<br>　　　　Plaintiff,<br>　　v.<br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br>　　　　Defendant. | NO. CV 18-0543-KS<br><br>MEMORANDUM OPINION AND ORDER |

## INTRODUCTION

Plaintiff filed a Complaint on January 22, 2018, seeking review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (Dkt. No. 1.) The parties have consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11-13.) On December 27, 2018, the parties filed a Joint Stipulation. (Dkt. No. 23 ("Joint Stip.").) Plaintiff seeks an order reversing the Commissioner's decision and

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

remanding the matter for an immediate award of benefits or, in the alternative, for further proceedings. (Joint Stip. at 27.) The Commissioner requests that the Administrative Law Judge's decision be affirmed or, in the alternative, remanded for further proceedings. (*Id.* at 28-29.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On May 9, 2013, Plaintiff protectively filed an application for a period of disability and DIB.[2] (Administrative Record ("AR") 114-25, 234-36.) On April 30, 2013, Plaintiff protectively filed an application for SSI. (AR 126-37, 237-42.) Plaintiff alleged disability commencing on December 31, 2009 due to lazy tongue / speech problem, learning disability, and delayed physical disability. (AR 114, 126.) After the Commissioner denied Plaintiff's applications initially (AR 138, 139) and upon reconsideration (AR 164, 165), Plaintiff requested a hearing (AR 179).

At a hearing held on February 25, 2016, at which Plaintiff was assisted by a Spanish interpreter and appeared with an attorney representative, an Administrative Law Judge ("ALJ") heard testimony from Plaintiff, a witness for Plaintiff, and a vocational expert ("VE"). (AR 100-13.) On March 25, 2016, the ALJ issued an unfavorable decision denying Plaintiff's applications for DIB and SSI. (AR 47-58.) On November 27, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-7.)

## SUMMARY OF ADMINISTRATIVE DECISION

Applying the five-step sequential evaluation process, the ALJ initially found that Plaintiff met the insured status requirements through December 31, 2014. (AR 49; *see* 20

---

[2] Plaintiff was 35 years old on the application date and thus met the agency's definition of a younger person. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). (*See* AR 114, 126.)

2

C.F.R. §§ 404.1520, 416.920.)  The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 31, 2009. (AR 49.) At step two, the ALJ found that Plaintiff had the following severe impairments: rule out learning disorder, rule out borderline intellectual functioning, and speech impediment. (AR 49.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (AR 50.) The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform heavy work with the following limitations:

> she can sit for six hours in an eight-hour workday with customary breaks; she can stand and/or walk for six hours with customary breaks; and she can understand and remember tasks, maintain concentration and persistence, interact with the general public, coworkers, and supervisors, and adapt to workplace changes frequently enough to perform unskilled low stress jobs requiring simple instructions.

(AR 52.) The vocational expert ("VE") classified Plaintiff's past work as a shopper's aid (Dictionary of Occupational Titles ("DOT") 296.357-010) and as a hand packager (DOT 920.587-018). (AR 110; *see* AR 56.) At step four, the ALJ found that Plaintiff could perform her past relevant work both as a shopper's aide and as a hand packager. (AR 56.) Alternatively, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, namely handle assembler (DOT 762.687-042) and inspector, furniture decals (DOT 979.687-030). (AR 56-57.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 58.)
//
//

3

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citation omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or that, despite the

legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

## DISCUSSION

The parties raise two issues: (1) whether the ALJ erred in rejecting the medical opinions of the consultative psychiatrist and state agency psychiatrist, and (2) whether the ALJ erred in rejecting Plaintiff's credibility concerning her subjective symptoms. (Joint Stip. at 4.) For the reasons discussed below, the Court concludes that these issues warrant reversal of the ALJ's decision.

### I. The ALJ Erred in Considering the Examining Physician Opinions

#### A. Testimony

Plaintiff's ALJ hearing is contained within a twelve-page transcript. (AR 102-14.) Plaintiff was assisted by a Spanish interpreter at her request, but she did admit she speaks both English and Spanish. (*See* AR 102-03.) Plaintiff testified she was currently getting treatment at San Pedro Mental Health for anxiety and depression but was not on medication. (AR 104-05.) She testified she was receiving services from "Daniel" but she could not explain the purpose or goals of her working with him which was why she brought him to the hearing. (AR 105.) She said her last job was with Albertson's in 2010 where she fulfilled online shopping orders. (AR 105-06.) Her job at Albertson's ended when the department closed. (AR 106.) She said she lives with her mother and father and her daily activities include playing Monopoly and Scrabble with her mother, playing cards, going to the grocery store, going to church, and walking in the park. (AR 106-07.) She also said she spends time with a friend: "[w]e converse, we go and we play, well we go to the bowling alley, things like that." (AR 107.)

Daniel Gomez testified on behalf of Plaintiff at the ALJ Hearing. (AR 103, 107-10.) He explained he was her case worker at Harper Resource Center. (103, 107.) He testified he was responsible for setting up services for Plaintiff "to help her develop her independent living skills since she has an intellectual disability." (AR 107.) He explained current services focused on developing "vocational skills and training and support." (AR 108.) Mr. Gomez further testified that Plaintiff "forgets a lot of information so she needs consistent support" and that she might be able to live independently in the future but "it wouldn't be complete independent living, she would require support on a regular basis." (AR 108.) Mr. Gomez testified that his understanding of Plaintiff's work history was that she held jobs for a short period of time, that she did have work skills, but she struggled with keeping her jobs. (AR 108-09.) He stated she was not receiving psychiatric treatment or medication. (AR 110.)

At the end of the hearing, the ALJ asked Plaintiff if she had anything else she wanted to add. (AR 112.) Plaintiff said all of her previous jobs had been "for a short period of time" and she had "always been fired." (AR 112.)

**B. Consultative Examining Psychiatrist's Medical Opinion**

On October 5, 2013, Dr. Nina Kapitanski, M.D., Board Certified Psychiatrist, performed a consultative psychiatric examination of Plaintiff. (AR 333-37.) Plaintiff was driven to the appointment by her family and she arrived on time. (AR 333.) She was casually dressed and groomed. (AR 333.) Plaintiff reported she was not in psychiatric treatment currently but said she might have seen a therapist in high school. (AR 333.) She said she was in special education classes in school and had a history of a speech impediment with difficulty pronouncing words but had not had treatment for it because, at the time, she did not think it was necessary. (AR 333.) She claimed she was normally happy but that she does get frustrated. (AR 333.) She said she liked to watch television, play on the computer,

take walks, and that she has a good friend she spends time with. (AR 333-34.) She was in a romantic relationship previously. (AR 334.) She did not report suicidal or homicidal thoughts or any hallucinations or paranoias. (AR 334.) She stated, "I try ti follow instructions, but something goes wring, it gets messed up. I get frustrated adequate can't do it." (AR 334 (errors in original).) Plaintiff was not on any medications, had never been psychiatrically hospitalized, but did have an unspecified family history of psychiatric problems. (AR 334.) She was born in Mexico but moved to California in 1979, when she was one year old. (AR 334.) She was single with no children. (AR 334.) She completed eleventh grade. (AR 334.) She said she worked for Albertson's for two years but had not worked since 2009. (AR 334.) She said she had been arrested and jailed one time. (AR 334.)

Plaintiff said she lived with her family. (AR 334.) She does not need assistance dressing, bathing, eating, toileting, or taking safety precautions. (AR 334.) She reported managing her own money and taking the bus for transportation. (AR 335.)

During the mental status examination, Dr. Kapitanski noted Plaintiff has a mild speech impediment, her affect was cheerful, her thought processes were linear and goal-directed, her thought content did not include hallucinations, delusions, illusions, or ideas of harming herself or others. (AR 335.) Plaintiff was alert, correctly oriented, remembered three out of three items immediately, and after five minutes, remembered two out of three items on her own and three out of three items with prompting. (AR 335.) Plaintiff was not good at math but could spell the word "world" forward and backward. (AR 335.) Plaintiff said the similarities between an apple and an orange are they are both round. (AR 335.) She said the similarities between a bird and a plane is they both fly. (AR 335.) She did not understand simple proverbs: her response to "two heads are better than one" was "think alike." (AR 335.) Plaintiff knew the capital of California and was able to remember the current and

previous two presidents with help. (AR 335.) She had common sense and responded appropriately to imaginary situations. (AR 336.)

Dr. Kapitanski diagnosed Plaintiff with rule out learning disorder, NOS and rule out borderline intellectual functioning. (AR 336.) Dr. Kapitanksi found Plaintiff's psychological stressors included her financial situation, lack of employment, and lack of social interactions, and that her GAF score was 64.[3] (AR 336.) She wrote Plaintiff's "prognosis would improve with appropriate services for skills based [sic] learning and accommodations for low level intellect. She would benefit from neuropsychologic testing to assess cognitive functioning." (AR 336.) Dr. Kapitanski observed Plaintiff had no difficulty interacting with her or her staff. (AR 336.)

Dr. Kapitanski opined Plaintiff would have mild difficulty in social functioning, mild difficulty in focusing and paying attention, mild difficulty in concentration, persistence, and pace, and she was adequately independent and capable of performing activities of daily living. (AR 336.) Dr. Kapitanski further opined Plaintiff could perform simple and repetitive tasks, but that she would have moderate limitations performing detailed and complex tasks, moderate limitations performing consistently without supervision, mild limitations completing a normal workday and workweek, moderate limitations accepting instructions from supervisors and interacting with coworkers and the public, mild limitations handling usual stress and demands, and that she may need accommodations related to her

---

[3] "GAF" refers to Global Assessment of Functioning. *See Diagnostic and Statistical Manual of Mental Disorders*, 4th ed. ("DSM IV"). A score in the range of 61 through 70 denotes some "mild" symptoms, such as depressed mood or mild insomnia, or some difficulty in social, occupational, or school functioning, such as occasional truancy or theft within the household, but indicate that the subject is generally functioning pretty well and has some meaningful interpersonal relationships. *Id.* GAF scores have been described as a "rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert,* 159 F.3d 1161, 1164 n. 2 (9th Cir. 1998) (citation omitted). However, pursuant to Agency regulations, the GAF scale has no "direct correlation to the severity of requirements in Social Security Administration mental disorder listings." *See* 65 Fed. Reg. 50746, 50764-6. "The DSM V no longer recommends using GAF scores to measure mental health disorders because of their 'conceptual lack of clarity . . . and questionable psychometrics in routine practice.'" *Olsen v. Comm'r Soc. Sec. Admin.,* 2016 WL 4770038, at *4 (D. Or. Sept. 12, 2016) (quoting DSM-V, 16 (5th ed. 2013)).

8

level of comprehension. (AR 336.) Dr. Kapitanski thought Plaintiff's prognosis would improve and become fair if she received mental health services, a vocational training program for skills-based learning, and accommodations. (AR 336-37.) Dr. Kapitanski believed Plaintiff could handle simple monetary transactions but would need assistance with managing bills or more complex financial transactions. (AR 337.)

### C. Consultative Internal Medicine Examining Physician Opinion

On October 10, 2013, Dr. Ruben Ustaris, M.D., performed a consultative internal medicine examination of Plaintiff. (AR 340-44.) Dr. Ustaris opined Plaintiff had no physical functional limitations. (AR 343.) His impressions however included that Plaintiff slurred her speech and needed to see a speech therapist, that Plaintiff had poor concentration and a learning disability and should follow up with a mental health specialist, and that Plaintiff had post-traumatic stress disorder and should follow up with a mental health specialist. (AR 343.)

### D. State Agency Doctors' Psychiatric Medical Opinions

Dr. Frances Breslin, Ph.D., reviewed Plaintiff's applications at the initial level on January 4, 2014. (*See* AR 114-37.) Dr. Breslin diagnosed Plaintiff primarily with non-severe loss of speech and secondarily with severe borderline intellectual function. (AR 120, 132.) Dr. Breslin reviewed Plaintiff's applications under the 12.02 Organic Mental Disorder listing and opined she had mild restrictions in activities of daily living, moderate difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence, and pace, and no episodes of decompensation of extended duration. (AR 120, 132.) Dr. Breslin found Plaintiff credible and gave great weight to Dr. Kapitanski's medical opinion. (AR 121, 133.)

//

Dr. Breslin assessed a mental RFC for Plaintiff. (AR 121-24, 133-136.) Under understanding and memory limitations, Dr. Breslin opined Plaintiff had moderate limitations understanding and remembering detailed instructions but she could "understand and remember simple 1-2 step instructions." (AR 122, 134.) Under sustained concentration and persistence limitations, Dr. Breslin thought Plaintiff had moderate limitations in her ability to carry out detailed instructions, moderate limitations in her ability to maintain attention and concentration for extended periods, moderate limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and moderate limitations in her ability to sustain an ordinary routine without special supervision. (AR 122, 134.) More specifically, Dr. Breslin wrote Plaintiff "can follow simple 1-2 step instructions," "attend to tasks/meet minimal production standards for repeated 2 hour periods," "work an 8-hour day," "benefit from casual supervision," "contact with peers should be casual and informal," and "can maintain attendance and schedules in the work setting." (AR 123, 135.) Under social interaction limitations, Dr. Breslin opined Plaintiff was moderately limited in her ability to interact appropriately with the general public and moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors. (AR 123, 135.) Under adaptation limitations, Dr. Breslin thought Plaintiff had moderate limitations in her ability to respond appropriately to changes in the work setting and moderate limitations in her ability to set realistic goals or make plans independently of others. (AR 123, 135.) Dr. Breslin found Plaintiff was otherwise not significantly limited. (AR 121-24, 133-36.)

Dr. P. M. Balson, M.D., reviewed Plaintiff's applications at the reconsideration level on April 9, 2014. (*See* AR 140-63.) Dr. Balson affirmed Dr. Breslin's opinion and reached the same diagnosis and RFC for Plaintiff. (AR 144-49, 156-61.) The only difference was Dr. Balson only found Plaintiff partially credible because her work history and activities of daily living suggested she could perform simple work. (AR 145-46, 157-58.)

//

### E. ALJ Decision

The ALJ considered Plaintiff's mental impairment under the 12.05 Intellectual Disability listing. (AR 50.) The ALJ found Plaintiff did not meet the requirements under Paragraph A, B, C, or D. (AR 50-52.) The ALJ did not make a finding as to what Plaintiff's IQ score was. (*See* AR 47-58.) Under Paragraph D of the listing, the ALJ found Plaintiff had mild limitations in activities of daily living, mild limitations in social functioning, moderate limitations in concentration, persistence, and pace, and no episodes of decompensation of extended duration. (AR 51-52.)

### F. Applicable Law

There are three categories of physicians: treating physicians, examining physicians, and nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see* 20 C.F.R. 416.927.[4] Treating physician opinions should be given more weight than examining or nonexamining physician opinions. *Orn*, 495 F.3d at 632. This is because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only if the ALJ provides "clear and convincing reasons supported by substantial evidence in the record." *Orn*, 495 F.3d at 632. If the treating physician's opinion is contradicted by another doctor, it may be rejected only by "specific and legitimate reasons supported by substantial evidence in the record." *Id.* Similarly, an ALJ must satisfy the clear and convincing reasons standard to reject an uncontradicted examining physician's opinion or satisfy the specific and legitimate reasons standard to reject a contradicted

---

[4] Effective March 27, 2017, the Social Security Administration revised its regulations directing the evaluation of medical opinion evidence, including 20 C.F.R §§ 404.1527, 416.927. But these revisions are not applicable or relevant to the analysis here relating to Plaintiff's May 9 and April 30, 2013 applications for DIB and SSI benefits.

examining physician's opinion. *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008).

An ALJ also has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even when the claimant is represented by counsel. *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (citation omitted). Although the burden to establish disability lies with the claimant, "it is equally clear that the ALJ has a duty to assist in developing the record." *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001) (citations omitted). The ALJ's duty to develop the record is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001) (citation omitted). The Social Security Administration ("SSA") will attempt to get medical evidence from a claimant's medical sources if given permission and may request and provide for a consultative examination if necessary. *See* 20 C.F.R. §§ 404.1512, 416.912.

If the Appeals Council "considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of SSA*, 682 F.3d 1157, 1163 (9th Cir. 2012); *accord Lingenfelter*, 504 F.3d at 1030 n.2.

**G. Analysis**

Plaintiff argues the ALJ erred in failing to fully account for Dr. Kapitanski's medical opinion in formulating an RFC for Plaintiff. (Joint Stip. at 6.) The ALJ gave significant weight to both consultative examiners' medical opinions when determining Plaintiff's RFC. (AR 55.)

//

The ALJ's RFC did not include limitations on Plaintiff's ability to maintain concentration, persistence and pace or interact with the general public, coworkers, or supervisors. (AR 52.) Dr. Kapitanski found Plaintiff would have moderate limitations performing consistently without supervision and moderate limitations accepting instructions from supervisors and interacting with coworkers and the public. (AR 336.) The ALJ gave significant weight to Dr. Kapitanski's opinion but did not provide any reasons for rejecting these aspects of Dr. Kapitanski's medical opinion. Because Dr. Kapitanski's opinion was not contradicted, the ALJ needed to provide clear and convincing reasons to reject it. *Carmickle*, 533 F.3d at 1164. Failure to do so was legal error.

In addition, both consultative examiner opinions found that Plaintiff has an intellectual disability and should receive testing to assess her cognitive function abilities. (AR 336, 343.) The ALJ does not address this aspect of these medical opinions or provide any reasons for his failure to do so. The ALJ did properly assess Plaintiff's mental impairments under the intellectual disability listing, Listing 12.05, but there is no indication that the ALJ had IQ test results to consider in evaluating Plaintiff's impairment. (*See* AR 50-52.)

When determining if a plaintiff is disabled based on an intellectual disability, "IQ scores are relied upon for the purpose of assessing that disability, [and] there is no question that a 'fully and fairly developed' record will include a complete set of IQ scores that report verbal, non-verbal, and full-scale abilities." *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930-31 (9th Cir. 2014) (citation omitted). This is true for two reasons, first, IQ scores help identify intellectual disability, can be dispositive of disability under the listing, and can affect other evidence in the record such as medical opinions. *Id.* at 931. Second, "the regulations promulgated by the SSA demonstrate that the Administration, based on its considerable expertise, has determined that it is essential for… IQ scores to be used in evaluating intellectual disability." *Id.* ("[S]tandardized intelligence test results are essential to the adjudication of all cases of intellectual disability, except where a claimant is unable to

complete such testing." (citing 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(D)(6)(b))). The concern in *Garcia* was that the plaintiff only had a partial set of IQ scores which was found insufficient for the ALJ to rely on in determining the plaintiff was not disabled because of intellectual disability. *Garcia*, 768 F.3d at 930-32. The Ninth Circuit found the ALJ committed legal error in failing to fully develop the record so that it included a full set of IQ scores for the plaintiff. *Id.* at 932.

The ALJ's determination here of Plaintiff's RFC is not supported by substantial evidence in the record because it does not consider intelligence test results. Reliance on the CE medical opinions is not sufficient because both opinions determined additional testing should be sought. The record before the ALJ was therefore inadequate for evaluation of Plaintiff's intellectual disability. *See Garcia*, 768 F.3d at 930-31; *Mayes*, 276 F.3d at 459-460. The ALJ committed legal error in failing to develop the record to include Plaintiff's IQ scores. *See Garcia*, 768 F.3d at 932.

The administrative record before the Court does include IQ test results for Plaintiff from July 2014. (AR 73-80.) Plaintiff's IQ score was 63. (AR 88.) It appears the results were presented to the Appeal's Council by Plaintiff's new counsel after the ALJ denied Plaintiff benefits. (*See* AR 5, 20, 23, 32-33, 73-80.) This IQ score would not have changed the ALJ's finding as to Paragraphs A or B of Listing 12.05, but it would potentially place Plaintiff within Paragraphs C and D. (*See* AR 50-52.) It is also possible that Plaintiff's test results would have affected the medical opinions in this case, especially considering both Dr. Kapitanksi and Dr. Ustaris felt further psychological testing was needed. *See Garcia*, 768 F.3d at 933. Because IQ scores are necessary for adjudicating intellectual disability claims and because they could have affected the medical opinions in this case, the error in failing to include them for consideration was not harmless. *See Brown-Hunter*, 806 F.3d at 494-95. Therefore, remand is warranted.

//

## II. **Remand Is Warranted**

Because remand is warranted on the issue of the treatment of the consultative examiners' opinions, the Court exercises its discretion and declines to reach the issue concerning Plaintiff's credibility. Because the Court cannot say based on the record before it that Plaintiff is disabled, this case is remanded for further proceedings. *See Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014).

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED AND REMANDED for further administrative proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and counsel for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: April 19, 2019

/s/ Karen L. Stevenson
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE